### The Overseers of the Poor of BEAVER TOWNSHIP v. the Overseers of the Poor of HARTLEY TOWNSHIP.

1. An operative, engaged by the month, at certain money wages, and a house to live in "into the bargain," by living in that house under that bargain one whole year, if it is of the yearly value of ten dollars, acquires a settlement in the district in which the house is.

2. It is not necessary that the lease, mentioned in specification III. section 9 of the Poor-Law of 1836, should be in writing;—going into possession, paying rent for premises that are of the yearly value of ten dollars, and dwelling upon the same one whole year, give a settlement.

3. The rent may be paid in labour or otherwise, if the value of the equivalent is ten dollars *per annum*.

CERTIORARI to the Quarter Sessions of Union.

*July* 20. The facts involved in this case are sufficiently stated in the opinion of this court.

*Slenker*, for the plaintiff in error.—Heidelberg *v.* Lynn, 5 Wharton, 430, shows that it is not necessary, under § 9 of the act of 1836, that there should have been a *contract* for a year to gain a settlement; *service* for that time is enough. Nor need the consideration be paid in money: Briar Creek *v.* Mount Pleasant, 8 Watts, 431; rent paid by pauper's surety, enough: Butler *v.* Sugarloaf, 6 Barr, 264; Byberry *v.* Oxford, 2 Ashmead, 10: Tioga *v.* Lawrence, 2 Watts, 44; Rex *v.* Benniworth, Harrison's Dig. 1700; 5 D. & R. 555; Rex *v.* Nactor, Har. Dig. 1700; 3 B. & Ad. 543.

Where a parish schoolmaster, under the provisions of a will, received an annuity, and was furnished with a house (rent free, but worth ten pounds a year), it gained him a settlement: Rex *v.* Lackenheath, Har. Dig. 1699; 2 Dowl. & Ry. 816.

A furnished room with fire found, rented by the week for a particular purpose, and the landlord to have the use of it at other times, is a tenement within the statute: Rex *v.* White Chapel, Ib.

Where a pauper was permitted by several persons, having a right of common, to occupy a tenement of ten pounds a year, as a reward

for his services as a hand, held to gain a settlement: Rex v. Melkridge, Har. Dig. 1705; 1 T. R. 598.

A pauper having, by permission of his father, occupied a tenement of the annual value of ten pounds, but for which he did not pay rent in money, was held to give settlement: Rex v. Fritwell, Ib. See the provisions of the English statute: Har. Dig. 1698; Act June 1836, § 9, Purdon, 953.

The evidence shows the house to have been of a "yearly value" greater than $10, and to have been dwelt in by Long for more than "one whole year." Was there a "bonâ fide lease?" A lease is a contract for the possession, &c., of lands, &c., on one side, and a recompense of rent or other income on the other: Bac. Abr. Tit. Lease. Rent or other recompense; Cruise's Dig. Tit. Lease. Here the occupation entered into the contract of wages. It was a lease.

Did Long "pay the said rent?" Rent is a certain profit in money, chattels, or labour, &c., 2 Bl. Com. 41; Bouvier's Law D. Rent. Here the rent was paid in labour.

The stat. 55 Geo. 3, cap. 50, is very similar to our statute; so is 6 Geo. 4, cap. 57, 2 Harr. Dig. 1698. The cases ruled under those statutes go further than the court is now asked to go. Rex v. Lackenheath; Rex v. Benniworth; Rex v. Melkridge, which was under stat. 14 Car. 2; Rex v. Fritwell.

Casey and Woods, contrà.—Under those British statutes, which are like our own, payment of rent is a condition precedent to gaining a settlement: Rex v. Carshalton, 6 B. & C. 93; 9 D. & R. 132; and it has not been shown that Long paid any rent.

Where a pauper was hired for a year as a shepherd, and was to have a house and garden rent free, seven shillings a week, and the going of 30 sheep with his master's flock as wages, and he lived two years with his master under the agreement: Held, that as the pauper by residing in his master's cottage as a servant did not "come to settle," he did not acquire a settlement by renting a tenement within the meaning of stat. 13 & 14 Car. 2, c. 12: Rex v. Bardwell, 3 D. & R. 369, and 2 B. & C. 161—cited 2 Harr. Dig. 1704.

The same principles are recognised in the cases of Rex v. Shipdam, 3 D. & R. 384; Rex v. Chestnut, 1 B. & A. 473; Rex v. Seacroft, 2 M. & S. 472; Rex v. Kelstern, 5 M. & S. 136.

The act of 13th June, 1836, § 9, requires the contract and residence to be for a whole year.

The pauper did not occupy the house as a tenant, but as a servant. There was a contract of service, none of lease. Whenever his time of service was ended, his right to occupy the tenement was gone. There was no "*bonâ fide* taking of a lease."

The opinion of this court was delivered by

BURNSIDE, J.—Long, the pauper, while residing in Beaver township with his family, became chargeable. He was removed by an order of two justices to Hartley, from which order the overseers of Hartley appealed to the Quarter Sessions, who quashed the order of removal. The question was, whether, under the evidence, Samuel D. Long, having a wife and children, had acquired a settlement in Hartley township. The provision in the act of 1836, under which the settlement is claimed, is contained in specification 3, of § 9 of that act; Dunlop, 631, 2, viz. "By any person who shall, *bonâ fide*, take a lease of any real estate of the yearly value of ten dollars, and shall dwell upon the same for one whole year, and pay the said rent." The evidence was clear that Long and his family resided for about two years at Berlin Iron Works, in Hartley township. He came in 1845, when they were building the furnace, and worked by the day for some time. On the 4th July, 1845, he went in the furnace as keeper, at $22 per month ; *he had a house and garden, and fire-wood into the bargain;* part of the time his wages were increased to $24 per month. He was there more than a year after this. *The house was considered part of his wages. He was told the house-rent was a good lift to him;* when his wages were raised to $24 per month, he wanted $26. *He was told by the manager that he ought to consider the house and privileges that he had, at least worth $2 a month. He was told what rent he would have to pay at other places.* He considered and admitted it was so. *The house had a garden, and was a story and a half high, with a small kitchen to it.*

All the hands that had families were furnished with houses. Married men were preferred, because they drew provisions and store goods. *They did not give away these houses.* They were offered so much per month, and if they wanted more, they were told the house was worth something.

This is an important inquiry, as respects that class of men and their families who work at iron works, as well as other factories in this state. Nearly all our factories are well supplied with dwelling-houses for the labourers who have families, and in which they reside. Many have boarding-houses for the single men. There is

not a factory in Pennsylvania that the owner or employer does not receive a high rent for those houses, either directly or indirectly, either by contract in rent, or contract for labour; and the evidence in this case satisfies us that Long paid $24 a year rent for his house. He was a tenant at will, and dwelt on the premises more than one whole year.

It is not necessary that the lease mentioned in the act should be in writing; going into possession, and paying a rent for the premises that are of the yearly value of $10, and dwelling upon the same one whole year, gives a settlement. No one can doubt but that Long paid his rent by his labour, which was principally paid for by the provisions he drew for his family, and the articles taken from the furnace store.

That the house and appurtenances was a tenement within the statute is to me manifestly clear. He paid rent beyond the value of $10, and he dwelt in it more than a whole year with his family.

The statute does not require a written lease, or that the rent shall be paid in money. It may be paid in labour or otherwise, if the house is occupied and the value of the labour or other equivalent exceeds $10 in value. A reference to a few cases will illustrate this.

A yearly servant hired in husbandry, had by an agreement a house and garden, a rood of potato ground, and the keep of a cow on the master's land. *The keep of the cow was instead of so much wages.* The cow having failed in her milk, the master, in place thereof, kept two heifers for him on his land, through kindness, and not in consequence of any bargain. The potato land and the keep of the two heifers being together above the value of £10, *held* that this was renting a tenement so as to confer a settlement: Rex v. Benniworth, 4 Dowl. & Ryl. 555; 2 B. & C. 775. Repairing gates is equivalent to rent: Rex v. Whitley, 1 T. R. 137; a settlement may be gained by a tenement of the yearly value of £10, though the rent of it be less: Rex v. Blisdale, Burr. Set. Ca. 828; 2 Bell's P. L. 137. A man was hired by a farmer residing in parish B. as his shepherd. It was agreed between them that he should have a cottage in B. *rent free*, and the going of one hundred and five sheep, with his master's flock. The term "going," meant that the sheep should be pasture-fed, and the feeding or pasture in B. was worth £10 per annum. Held, upon a special case stating these facts as found by the session, that it was to be inferred from the case, that the feeding of the cattle was to be in the parish B., and

therefore that there was a letting of a tenement of £10 per annum in that parish: Rex *v.* Nactor, 3 B. & Ad. 543.

The evidence in the case is that iron-masters do not give away their houses for nothing. The township, wherever the works are, ought to support their poor.

The order of the Sessions is quashed, and the order of removal of the two justices of the peace is affirmed.