# Overseers of Laporte Borough *versus* Overseers of Hillsgrove Township.

95   269
167   257
95       269
25 SC 598
25 SC 600
95       269
33 SC ¹381

1. Under the Act of March 16th 1868, authorizing writs of error in poor cases, there can be no review of the judgment of the Quarter Sessions on the facts and merits of the case, but only of such decisions on points of law and evidence as may have been excepted to.

2. By the docket of a justice of the peace it appeared that suit was brought against B., the husband and father of the paupers, whose settlement was the subject of controversy, for rent due on a lease to him of a certain house, and that said suit, after the admission of a set-off of $5, resulted in a judgment against B. of $17.50, upon which he afterwards paid $10 : *Held*, that this was legitimate evidence of a lawful demand for and payment of rent to the amount above specified.

3. Where an attempt is made to impeach an order of relief on the ground of fraud the declarations of the pauper are admissible for the purpose of showing that the officers acted in good faith in issuing the order and affording relief.

4. Under the poor laws a settlement cannot be acquired by leasing alone, there must also be the payment of rent, but this money need not be paid in money ; it may be paid in the equivalent of money, labor or other services, and hence where one contracts to pay in services it is competent to show that he did not comply with that contract, and as a consequence did not gain a settlement in a poor district thereby.

5. When an order of relief is conclusive of the fact that the persons named therein were the proper subjects of an order of removal, although the latter was not made until nine months after the first was issued.

June 22d 1880.   Before SHARSWOOD, C. J., MERCUR, GORDON, TRUNKEY, STERRETT and GREEN, JJ.   PAXSON, J., absent.

Error to the Quarter Sessions of *Sullivan county:* Of May Term 1880, No. 201.

In the court below this was an appeal by the Overseers of the Poor of the borough of Laporte from an order of removal of Mrs. Elizabeth Burnett and her five children from the poor district of Hillsgrove.   The case was argued before Elwell, P. J., of the Twenty-sixth Judicial District, having been certified to said district by Ingham, P. J., of the Forty-fourth District.   The facts and conclusion of law will be found in the following opinion of Elwell, P. J. :

" On the 5th day of December 1879 an order was issued by two justices of the peace for the removal of Elizabeth Burnett and five minor children from the township of Hillsgrove to the borough of Laporte, upon the allegation of the overseers of the poor of said township that they had become chargeable upon that district, having no settlement therein.   Whereupon the justices having adjudged that the borough of Laporte was the place of their last legal settlement ordered their removal thereto.   From this order the said borough appealed to the court.   Elizabeth Burnett is the wife of Henry Burnett, and they are the parents of the five children mentioned in the order.   It appears by the evidence that in the latter part of March 1878, Burnett took a lease of a house and lot

.[Overseers of Laporte Bor. *v.* Overseers of Hillsgrove Twp.]

of Wheeler Green in Hillsgrove township at a yearly rent of $15;
that he moved into that house about a week before the 1st day of
April 1878, and that he remained there with his family until the
latter part of February 1879, when he was arrested upon a charge
of violating the laws in regard to the sale of liquor.   He was con-
victed, sentenced and remained in jail until the 4th day of April
1879, when he was discharged from custody.   Before his arrest he
paid $12.50 on his rent to Mr. Green, and had contracted for the
lease of his property for another year from the ·1st day of April
1879, for the same rent.   On the 10th day of March 1879, an
order of relief was issued by two justices of the peace,· by which
Elizabeth Burnett and her five children became or were declared
to be a town charge.   On the 15th day of March 1879, an order
of removal was issued, directing the overseers of the poor of
Hillsgrove township to remove Mrs. Burnett and children from
Hillsgrove to Laporte township, which was adjudged to be the
place of their last legal settlement.   Under this order the family
·was removed to Laporte township on the 19th day of March 1879.
Laporte township appealed, and this order was reversed by the court
and the persons mentioned in this order were removed back to
Hillsgrove township on the 27th of September 1879.

   " Henry Burnett, in the year 1878–79, and before and since, was
able to labor and support his family.   The facts in regard to the
obtaining the order of relief will be more particularly mentioned
when we come to consider the question of settlement in Hillsgrove.
The overseers of the borough of Laporte deny that Henry Burnett
ever had a settlement in that district, and it is alleged that if he
did at one time have a settlement there, it was not his last place of
settlement, he having subsequently to his residence there acquired a
settlement in Laporte township and again a still subsequent settle-
ment in Plunkett's Creek township in Lycoming county, and that
under the facts the continuity of the occupation of the Green
house was not broken by the removal of Burnett's wife and chil-
dren; that by the renting, occupation and payment of rent he
acquired a settlement in Hillsgrove township.

   "In order that the whole case may appear in the records, the
facts in regard to these several settlements must be considered.   I
begin with the borough of Laporte.   In 1871 Burnett took a lease
of the Methodist Episcopal parsonage in the borough of Laporte at
$2.50 per month, and with his family resided therein, so far as
appears, without a break until March 1872.   Judge Ingham and
Walter Spencer do not remember of his being there in the winter
of 1871–2, but it appears that he was there during the summer,
and he was there in March 1872, at which time (March 23d 1872)
suit was brought against him before Justice Meylert, to recover for
nine months' rent, $22.50.   He claimed and was allowed $5 for
repairs on the rented premises. .Judgment was rendered against

him on the 30th of March 1872 for $17.50, and on the same day he paid thereon $10, which was at the same time receipted by one of the trustees of the parsonage, and the payment was noted on the docket of the justice. From the parsonage Burnett moved to a house which he rented at $1.50 per month. This house is known as the 'Brewster' house, and is also in the borough of Laporte. He lived there, according to the testimony of the agent, John H. Green, three and a half or four months. He paid part of the rent; Mr. Green says not more than $5. From there he moved to what is called the 'Hays house,' also in the borough, he having leased the same of the agent, William Meylert, at a rent of $5 a year for the garden and fifty cents per month for the house. He remained in that house six months and paid $8 rent.

"The evidence clearly establishes that Burnett bona fide took lease of real estate in the borough of Laporte of the rental value of $10 per year and that he dwelt upon the same for one whole year and paid the said rent.

"From the 'Hays house' Burnett moved to the Laporte tannery in Laporte township. He worked for the tannery company and lived in one of its houses for which so far as appears no rent was charged or paid.

"It does not appear that the company paid any less wages to married men who occupied their houses than to other workmen who did not, and besides, it does not appear how long Burnett occupied a house there. Probably more than one year.

"On the 20th of June 1876 he moved with his family to Plunkett's Creek, Lycoming county, and rented a house of the tannery company at Proctoryville in said township (Plunkett's Creek) at $2 per month, and lived in it until the 1st of April 1877, and paid on the rent $7.50.

"He then rented a house of Edward Day in said township, the yearly rental of which was worth $12 per year. He had with the house a garden. In addition Mr. Day gave him a patch for potatoes if he would clear it off—over half an acre. Mr. Day had at that place thirty acres of ground. The contract between Day and Burnett was, that Burnett was to take care of the place for the house and garden and potato patch. He was to see to things, and if cattle got in to turn them out. There were no windows in the house at the time of the contract; he was to get windows and put them in and leave them in when he went away. He was to keep persons from stealing the apples on the place. He lived at the place until about a week before the 1st of April 1878, and moved from there to a house in Hillsgrove township, rented of Wheeler Green, as before stated.

"While in the Day house in Plunkett's Creek township he cleared off the potato patch and raised potatoes, doing work, as he says, at the preparation worth $5 or $6. He put the windows in

[Overseers of Laporte Bor. *v.* Overseers of Hillsgrove Twp.]

the house worth $3 or $4, and he testifies that he took care of the place as he agreed. But it appears from other testimony that although he put the windows in the house he did not leave them there when he left. He protected the orchard from depredation by others, according to Mr. Day, by taking the fruit himself. He refused to drive the cattle from the wheat of Mr. Day, and he committed trespass by cutting down trees. He testifies that he paid rent by cutting oats for Mr. Day, but the latter testifies that the charge for cutting oats was but $1.50, and that he paid to him. When he went on the place the yard about the house was fenced on three sides with palings, making fifty-four feet of that kind of fence; when he left all of the palings but fifteen were gone. Instead of attempting to protect the crops of his landlord he declared he would not drive the cattle off it if they eat all the wheat up by the roots. In short, he failed to render the 'stipulated service' to his landlord. Besides positive neglect, he committed waste to the freehold approximating, if not quite equal to, the rental value of the property leased. I find as a fact that he did not pay rent to Mr. Day.

"From the Day place he moved with his family to Hillsgrove township, having a short time before rented the Green place, as above stated. The facts in regard to the renting, payment of rent and dwelling upon that property being fully stated in the first part of this opinion, I come now to the consideration of the circumstances under which the family of Burnett was made chargeable upon the township of Hillsgrove whereby the foundation for the order of removal from that township was laid. On the part of the township several witnesses testified that Mrs. Burnett, after her husband was sent to jail, declared that she must have help from the township; that she had but $2.40 in money, and a very small supply of provisions; that she declared she was not able to do her work, and must have the assistance of a hired girl. And Justice Biddle testifies that she desired him to procure an order of relief; that she was reluctant to apply to the town, but was forced to do so. It is also proved by two witnesses that Burnett said to one of the overseers of the poor, 'you folks will have to take care of my family.'

"All of the testimony is contradicted by Mrs. Burnett, so far as regards her declarations. She deposes that she did not apply for assistance; that she told the officers when she needed assistance she would let them know; that she had money, and showed it to the township officers; that they made false representations to her in regard to the length of time her husband would be in jail, and in regard to the ability of the town to furnish her support until after a special tax was laid. Burnett denies having made the declarations imputed to him. On the other hand it is shown by the township that Mrs. Burnett received some support from a store

[Overseers of Laporte Bor. *v.* Overseers of Hillsgrove Twp.]

in pursuance of the order of relief, and a load of wood prepared for use.

"Now as regards the question whether these persons were chargeable to and had become a charge upon the township of Hillsgrove, nothing need be said further than to refer to a well-settled rule in regard to the conclusiveness of an order of relief. No appeal lies from such an order: Lampeter Township *v.* Lancaster Borough, 2 Yeates 164. Overseers are merely ministerial officers, exercising an authority conferred by the order of the magistrates, and are not trusted with any discretionary powers: Overseers *v.* Baker's Exr's, 2 Watts 282, per SERGEANT, J. It is necessary that a pauper, before he is removed, should have become chargeable, or have become likely to become chargeable, to the district which undertakes to remove him; otherwise the justices have no jurisdiction; but an order of relief is conclusive evidence of the chargeableness of a pauper: Cumberland Township *v.* Jefferson Township, 1 Casey 465. Under any direction, where an order of relief or maintenance is issued, the township on whom it is made is bound to support the pauper until they find the place of his last settlement. From such an order there is no appeal. The overseers who receive such order are bound to obey it: Overseers of Milton *v.* Overseers of Williamsport, 9 Barr 49, per BURNSIDE, J.

"In Cumberland *v.* Jefferson, *supra,* evidence was given to prove that the pauper was an able-bodied woman, and not chargeable as a pauper. Proof was submitted by the plaintiff of her inability to earn a livelihood. In the opinion of the Supreme Court, delivered by WOODWARD, J., as we have seen, he held that the order of relief was conclusive evidence of the chargeableness of the pauper.

"The law submits that question to the adjudication of a tribunal whose decision cannot be reviewed except in cases where it is shown by a clear preponderance of evidence that it was obtained by fraud. Fraud is not protected by any judgment or decree of any court: Mitchell *v.* Kintzer, 5 Barr 217; Bigelow on Estoppel 149.

"The legal presumption is in favor of the honesty and fairness of a transaction, unless upon its face the contrary appears.

"In this case, the good faith of the justices who granted the order of relief, as well as that of the overseers of the poor, is attacked by the testimony of Mrs. Burnett, but, unless Justice Biddle, the two overseers of the poor, Mrs. Fincel and Aaron Lewis have testified falsely, Mrs. Burnett did apply for relief, and did appear to need it. It is objected that her statement in regard to her necessities is not evidence. I hold, however, that, taken in consideration with the surrounding circumstances, they are evidence as part of the *res gestæ;* and her acceptance of the relief, is also evidence in behalf of the township. No doubt the overseers were anxious to avoid the

14 NORRIS—18

completion of the settlement of Burnett in Hillsgrove township, and were willing his family should become a town charge to that end. But the weight of evidence is, that the family needed assistance, and that it was rendered at the request of Mrs. Burnett, and in accordance with the declaration of the husband that the town ' would have to take care of his family.'

" If there was a conspiracy to defeat the settlement in Hillsgrove, as alleged, the defendant has failed to establish it by a preponderance of evidence.

" It does not appear by the evidence that Burnett returned to Hillsgrove after being liberated from jail. The only remaining question in the case is, whether he dwelt one whole year upon the .Green property. His family was removed by an order of removal to Laporte township before the year expired; that order on appeal was reversed, but as it was no doubt granted under the belief that he had a settlement there, I am of the opinion that his dwelling upon the leased property in Hillsgrove ceased with the removal of his family from the premises, and that his settlement there was not complete.

" When a pauper has become actually chargeable to a district he may be immediately removed, although if allowed to remain he would shortly acquire a settlement.

" It is objected that the order of removal in this case should be quashed because it is alleged it separates husband and wife. I do · not so understand the effect of it. We hold that the settlement of Henry Burnett is in Laporte borough, and not in Laporte township, nor in Plunkett's Creek, nor in Hillsgrove. His wife and family, by this order, were removed to his place of settlement, and so far as appears, to his place of residence at the time the order was issued. This is not forbidden by the statute.

" Settlement being entirely a matter of statutory regulations, the court has no discretion upon the subject, as Burnett has almost acquired a settlement in Hillsgrove, I have reluctantly reached the conclusion to affirm this order of removal.

" And now, April 21st 1880, it is ordered and adjudged that the order of removal in this case be affirmed, and that the borough of Laporte pay the costs, to wit : the office costs and plaintiff's bill of $24.66, and $       for expenses in maintaining the pauper. In filling the blank for expenses nothing but the actual cost of supporting the paupers should be allowed. Pay to the township officers ought not to be allowed."

The counsel for Laporte borough excepted to the rulings of the court : 1. Because the court erred in finding as a fact that the paupers had a settlement in the borough of Laporte by renting real estate in said borough, and dwelling upon the same one whole year and paying the said rent. 2. In not finding as a fact that Henry Burnett did, subsequently to his residence in Laporte borough,

[Overseers of Laporte Bor. *v.* Overseers of Hillsgrove Twp.]

acquire a settlement in Laporte township; and also in Plunkett's Creek township, Lycoming county, by renting real estate in each of said districts, dwelling upon the same one whole year, and paying in each case a rent of $10.　3. In not finding as a fact that the order of relief upon Hillsgrove township for the maintainance of the wife and children of Henry Burnett was obtained through fraud, falsehood and misrepresentations, and for the mere purpose of preventing said paupers from dwelling upon the property leased by said Burnett, and on which he and his family dwelt until fraudulently removed by the officers of said township, he having paid more than $10 rent.　4. In not finding that Henry Burnett, his wife and family, in fact and law had a settlement in said township of Hillsgrove at the time of obtaining the order of removal in question, on the 5th of December 1879.　5. In holding that the declarations of Mrs. Burnett were evidence.　6. In holding that the order of removal was not illegal, and did not, within the Act of Assembly, separate husband and wife.　7. In affirming the order of removal, and directing the costs and expenses to be paid by the borough of Laporte.　8. In admitting the evidence of Wm. Meylert so far as it related to any release or payment of rent by Henry Burnett for the Methodist Episcopal parsonage in Laporte borough, and in admitting in evidence a copy of the docket of Wm. Meylert, an alleged justice of the peace, in regard to the suit of the Trustees of the M. E. Church *v.* Henry Burnett.　9. In finding that Henry Burnett did not pay rent to Edward Day, after the uncontradicted evidence of the improvements made by him. 10. In finding as a matter of law in this case, that the order of relief, was conclusive of the fact of the parties therein named being proper subjects of relief, when it was shown that the order of relief was granted nine months, or nearly that, before the order of removal, and that the circumstances were entirely changed, so that any occasion for relief (if any ever existed) had entirely ceased. 11. In finding that an order of removal which had been reversed, and paupers sent back to the township, stopped or broke the residence of the paupers in said township, and their occupancy of the leased tenement.　12. In admitting the evidence of Edward Day, as to any damages done by Henry Burnett to his (Day's) property, as being entirely irrelevant and immaterial, as the same could not, in any way, be set-off against any work done or repairs made on his place, towards the rent　The court overruled these exceptions, when the Borough of Laporte took this writ and alleged that in this action the court erred.

*E. M. Dunham* and *E. P. Ingham,* for the Overseers of Laporte Borough.——It was error to admit in evidence the docket of the justice of the peace.　When officers move persons in their charge out of a township they do so at the risk of the township.

[Overseers of Laporte Bor. *v.* Overseers of Hillsgrove Twp.]

And if they are improperly removed, and the township is compelled to receive them again, they were in law residents of the township from which they were unlawfully removed. The plaintiff acted fraudulently in procuring the removal. An order of relief is only conclusive for a reasonable time. Admissions of the pauper are not evidence: West Buffalo *v.* Walker, 7 Watts 173. Payment of rent may be made by labor and improvements: Brier Creek *v.* Mt. Pleasant, 10 Watts 432; Beaver Township *v.* Hartley Township, 1 Jones 154.

*Charles F. Sweet*, for the Overseers of Hillsgrove Township.— The admission of the docket of the justice and the testimony founded thereon were proper : Numbers *v.* Shelley, 28 P. F. Smith 426. Burnett did not render to Day the stipulated services to the value of ten dollars per year. On the contrary, in addition to his omission of duty, he did him positive injury. The legal presumption is in favor of the fairness of the acts of the overseers : Overseers of Union *v.* Aurand and Wolfe, 10 Watts 134. It was competent for Hillsgrove township to prove the statements of Mrs. Burnett in regard to her necessities. The leasing by Burnett of the house in Hillsgrove for the second year gave him no tenure there.

Mr. Justice GORDON delivered the opinion of the court, October 4th 1880.

In the case of Lower Augusta *v.* Selinsgrove, 14 P. F. Smith 166, it was held, that under the Act of March 16th 1868, authorizing writs of error in poor cases, there can be no review of the judgment of the Quarter Sessions on the facts and merits of the case, but only of such decisions on points of law and evidence as may have been excepted to. This relieves us from an examination of all those assignments of error which are based on the findings by the court below of facts tending to establish the settlement which forms the subject of the present controversy. Nevertheless, we are free to say, after careful examination of those facts, that, in our opinion, the learned judge of the court below has arrived at a correct conclusion. We may, indeed, concede that the question is a close one and not free from doubt, but on the whole, the evidence preponderates in favor of the judgment which he has reached. We turn then to the consideration of those exceptions to the admission of evidence and rulings upon points of law which it is our legitimate duty to consider. The exceptions to evidence are three : first, to the admission of the docket of William Meylert, a justice of the peace in the borough of Laporte. By this docket it appears that suit was brought by the trustees of the Methodist Parsonage against Henry Burnett, the husband and father of the paupers whose settlement is the subject of the present contention, for the

[Overseers of Laporte Bor. *v.* Overseers of Hillsgrove Twp.]

rent due on a lease to him of that building. This suit, after the admission of a set-off of five dollars for repairs, resulted in a judgment against Burnett of seventeen dollars and fifty cents, upon which he afterwards paid ten dollars. That this was legitimate evidence of a lawful demand for and payment of rent to the amount above specified is too clear for argument, and if, in addition to this, it was used for some other and improper purpose, specific exception ought to have been taken thereto.

Second, to the admission of evidence to prove the declarations of Mrs. Burnett at or about the time of the issuing of the order of relief. But as an attempt was made to impeach this order on the ground of fraud, the allegation being that it was procured at a time when Burnett's family needed no relief, and for the purpose of preventing a settlement in Hillsgrove township, her declarations were certainly pertinent as affording some evidence of the condition of herself and her children. According to the testimony of Esquire Biddle, the order was procured at her own instance and upon her own representations of the necessities of herself and family, hence, her declarations at and about that time were part and parcel of the transaction, and as such, admissible for the purpose of showing that the officers acted in good faith in issuing the order and affording relief. Nor must it be forgotten that a case like the one in hand is not for the jury but for the court, and that the rules governing the admission of evidence do not apply with the same strictness to the latter as to the former. Where evidence is addressed to the court alone, it is not necessary that its admissibility should be determined at the time of its offer, but its final reception or rejection must depend on its relevancy or irrelevancy as it appears in connection with the whole case. When offered it may be irrelevant, but it may afterwards become relevant; it may be valueless or impertinent in chief, but may be found to be both valuable and pertinent as rebutting. It may be objectionable as proof of the main subject of controversy, but may be unobjectionable as the test of the credibility of a witness; all this, however, must be determined by the court on a view of the whole case and not upon a partial presentation of it. Such then being the proper standpoint from which to view the rulings in the case under consideration, an examination of the whole testimony, as we have it now before us, makes it evident that Mrs. Burnett's declarations might have been used to impeach her testimony for the defence, if for no other purpose.

Third. Exception has been taken to the admission of the evidence delivered by Edward Day. But we think this was admissible for the purpose of proving that, whilst there had been a leasing by Burnett in Plunkett's Creek township, there had been no payment of rent. Day says that he let him have a house on the back part of his own place; that in consideration thereof he was to perform certain services, and as there were no windows in the house, he was to get windows and put them in. Now, surely, it was proper for him to

[Overseers of Laporte Bor. *v.* Overseers of Hillsgrove Twp.]

inform the court whether or not these conditions were performed; to state that the windows, though obtained and put in to the house, were taken away when Burnett left; that he did not look after and protect the property as he had agreed to do, but on the contrary, cut down the timber and destroyed the fence. Under the poor laws a settlement cannot be acquired by leasing alone, there must also be the payment of rent, but this rent need not be paid in money; it may be paid in the equivalent of money, labor or other services. Had Burnett complied with his contract and thus paid his rent, doubtless he would have acquired a settlement in Plunkett's Creek township, hence, the pertinency of the proof that he did not comply with that contract, and, as a consequence, did not gain a settlement in that poor district. It is true, Burnett himself tells a very different story, but this does not render Day's testimony incompetent; it only raises a question of credibility which it is not our province to settle. Finally, exception is taken to the finding of the court that, as a matter of law, the order of relief was conclusive of the fact that the persons named therein were the proper subjects of an order of removal, though this last-named order was not made until nine months after the first was issued. But, undoubtedly, such an order was evidence, and that conclusive, that the persons therein named were paupers, and for the time being chargeable upon the township of Hillsgrove, and thus being paupers, they were, of course, the subjects of an order of removal: Cumberland *v.* Jefferson, 1 Casey 426. What possible effect the interval of nine months, between the dates of the two orders, can have upon the question involved in this case, has not been made clear to us. If, at the time of the removal, the persons constituting the family of Burnett had ceased to be paupers, the order of removal would be inoperative, but if they continued to be a charge, the relief order would be as effective as proof of the inception of that charge as it was on the day of its issue. For this order is after all but the statutory method of indicating the person or persons who are entitled to the public support: the warrant to the overseers for putting the name or names of such person or persons on the poor books. But when in this manner they become the subjects of public relief, they so continue until such relief is no longer necessary. It follows that the order for relief is conclusive only of the fact that at the time of its issue the persons therein named were entitled to maintenance as paupers, but it is only prima facie evidence of the continuing necessity for relief. If, therefore, the Burnetts were not paupers at the time of the issuing of the order of removal, the defendant might have proved that fact and so relieved itself of responsibility, but it is obvious that the time intervening between the order for relief and the order for removal has nothing to do with the question of settlement, the only one involved in this case.

The judgment of the court below is affirmed.