## Overseers of the Poor of the Borough of Milton v. Overseers of the Poor of West Chillisquaque Township, Appellants.

*Poor law—Settlement by leasing—Rent paid by services.*

Under the poor law a settlement cannot be gained by leasing alone, there must be the payment of rent, but this need not be paid in money; it may be paid in money's worth, labor or other equivalent.

Where by a contract with his employer, a workman became entitled to the use of certain premises of a yearly value of $30.00, occupied said premises for two years and performed the services for which such use or letting of said premises formed part consideration, he thereby gained a settlement under the poor law in that poor district where the premises were located.

*Appeals—Conclusiveness of findings of fact—Poor law.*

The conclusiveness of facts found by the court below will not be questioned by the appellate court where there is competent evidence to support them.

Argued Nov. 14, 1898.   Appeal, No. 69, Oct. T., 1898, by defendant, from decree of Q. S. Northumberland Co., May Sess., 1897, No. 1, affirming order of removal.   Before RICE, P. J., ORLADY, SMITH, W. W. PORTER and W. D. PORTER, JJ. Affirmed.

Appeal from order of removal of William M. Fry and family made by two justices of the peace for the county of Northumberland.   Before SAVIDGE, P. J.

It appears from the record that William M. Fry, wife and family entered into an agreement with Daniel Clinger who resided in the borough of Milton and owned farms in the township of Chillisquaque, which farms he farmed by hired help. By this agreement (which was lost but the contents established by parol), Fry obligated himself to move on the farm of Clinger, to stay there one year, to work at such work as Clinger had for him to do; to take care of the property of Clinger; to take care of the house and other buildings on the farm, the horses, cattle, chickens, turkeys, etc., and the wife to perform certain duties; for which services Daniel Clinger agreed to pay Fry $12.00 a month with certain allowances or provisions.   The agreement also contained the following clause:

" The said William M. Fry is to have the use of the house and garden in addition to the other compensations for services to be rendered as long as the agreement is complied with, but should William M. Fry refuse to comply with the foregoing agreement, then he agrees to remove from off the premises inside of fifteen days after such refusal and legal notice is given, and thereby forfeits all claims on anything he may not have received, wages only excepted.   It is understood and part of this agreement that the wife of the above named William M.

Fry is to attend to the raising of the chickens, turkeys, young calves and the milking and making of butter, etc. It is understood and is a part of this agreement that D. Clinger is to furnish all feed for the stock belonging to him on said farm. The said William M. Fry to furnish his own board and also his family. It is further agreed that should the party of the second part continue on this above described premises after the expiration of the lease then this lease to continue in full force for another year, and so on from year to year until a legal notice is given for such removal."

The court below found as a fact that the yearly value of the house was above the value of $10.00, and that as Fry occupied it for two years and in accordance with the contract gave his services in part for the rent, he gained a settlement in West Chillisquaque township, under clause 3, sec. 9 of the Act of June 13, 1836, P. L. 539, citing Beaver v. Hartley, 11 Pa. 254, and Laporte v. Hillsgrove, 95 Pa. 269.

The order of removal was affirmed and it was directed that the appellants pay the costs, charges and expenses incurred by the appellees, overseers of the poor of the borough of Milton, in relief and removal of the said William M. Fry and family, as well as the cost of this case. Overseers of the poor of West Chillisquaque appealed.

*Errors assigned* among others were (5) in answering the fourth point of facts of the appellant, which point and answer are as follows: "4. That both parties to the contract, Daniel Clinger and William Fry, agree in their testimony that the house was not rented to William Fry, that there was no rent reserved and that there was no rent paid. *Answer:* We find the facts as stated in this point. In this proceeding, however, the parties to the contract are not competent to construe it." (9) In answering the first point of the appellee, which point and answer are as follows: "1. That the agreement between D. Clinger and William Fry under the terms of which the said William Fry with his family moved to and dwelt upon and cultivated the farm, named Fairview, of the said D. Clinger in West Chillisquaque township, continuously from April 1, 1894, to April 1, 1896, was the taking of a lease of real estate within the meaning of clause 3, section 9, of the act of June 13, 1836,

and that by reason thereof the said William Fry and family acquired a legal settlement in West Chillisquaque township, Northumberland county. *Answer:* We affirm this point and find the law as therein stated." (16) In answering the sixth point of facts of appellee, which point and answer are as follows: " 6. That the yearly value of the said house and garden was in excess of $10.00, to wit: of the yearly value of $30.00, and that the said William Fry paid to said D. Clinger, in services rendered in cultivating said farm, more than $10.00 each year that he dwelt in said house for the privilege of dwelling therein. *Answer:* We affirm this point and find the facts as therein stated." (17) In finding and deciding as follows: "William Fry, the pauper, cultivated Clinger's farm from April 1, 1894, to April 1, 1896, under a contract of hiring. The written agreement made him Clinger's hired servant. The possession of the farm and everything appertaining thereto, outside of the house and garden, was in Clinger. As to the house and garden the relationship was different. Fry was to have the use of the house and garden in addition to other compensations, for services rendered, so long as he complied with the agreement. This he had for a definite term, to wit: one year, and, if he continued on the premises after the expiration of what the parties themselves termed a lease, he was to continue from year to year, until Clinger gave him legal notice to quit. The use of the house and garden, as expressed in the agreement, means the exclusive use. There is nothing in the agreement indicating a different intention. The use of the house and garden was given to Fry for service to be rendered." (18) In finding and deciding as follows: "The yearly value of the house was above $10.00, and as Fry occupied it for two years and in accordance with the contract, gave his services in part for the rent, he gained a settlement in West Chillisquaque township, under clause 3, section 9, act of June 13, 1836."

*R. M. Cummings* and *Lewis Dewart,* with them *H. W. Cummings,* for appellants.—It was the duty of the appellees to prove a contract to pay either a stipulated compensation for the use of the land, or such a sum as the use was reasonably worth: Brolasky v. Ferguson, 48 Pa. 434.

Inasmuch as both parties to the agreement swear that it

was not intended that any rent should be paid, the court certainly would not presume that any was to be paid. As was said by ORLADY, J., in Wright v. Gas Co., 2 Pa. Superior Ct. 219, "so long as parties call upon courts of justice to administer their contracts they must expect them to be administered as nearly as may be according to the very intention and understanding that were present in the minds of the parties when the contract was signed."

The parties to any contract, if their agreement is in writing (as it was in this case, before it was destroyed), if it is ambiguous may prove by parol what understanding they put upon it. And if they agree in their construction, that construction must be adopted: Wright v. Gas Co., 2 Pa. Superior Ct. 219; Walker v. Marion, 148 Pa. 1.

*C. G. Voris*, for appellees.—This covenant being proven its construction, in connection with the other covenants in the agreement, was for the court, and not for the witnesses, for the reason that the language of the covenant is plain and unambiguous.

The construction of a contract is a matter of law for the court and not of fact for the jury: Shafer v. Senseman, 125 Pa. 311; Fisher v. Moyer, 17 W. N. C. 500.

It is not necessary that the term lease should be used. Whatever is equivalent will be equally available. If the words assume the form of a license, covenant, or agreement, and the other requisites of a lease are present they will be sufficient: Bussman v. Ganster, 72 Pa. 285; Moore v. Miller, 8 Pa. 272.

The Fry agreement had all the requisites of a lease: Mitchell v. Com., 37 Pa. 187; Kunkle v. Club, 10 Phila. 52.

To acquire a settlement by leasing under clause 3, section 9, Act of June 13, 1836, the lease need not be in writing, and the rent need not be paid in money; it may be paid in the equivalent of money, labor or other services: Overseers v. Overseers, 1 Pa. Superior Ct. 383; Overseers v. Overseers, 95 Pa. 269.

An operative engaged by the month at certain money wages and a house to live in, into the bargain, by living in that house under that bargain for one whole year, if it is of the yearly value of $10.00, acquires a settlement in the district in which

the house is: Beaver v. Hartley, 11 Pa. 254; Beaver Twp. v. Rose Twp., 98 Pa. 636.

OPINION BY RICE, P. J., January 18, 1899:

The fact that both parties to the instrument under which William Fry entered and occupied the Clinger premises testified that the house was not rented to the former and that no rent was reserved or paid is not conclusive of the question upon which this case turns. The contract was in writing and, although lost, its contents were satisfactorily proved. Therefore, the court was clearly right in holding, that it was its province, and not that of the witnesses, to construe it. Nor is the fact, that, in the instrument itself, the parties speak of it as a lease, conclusive of the question for decision, although it unquestionably aids in the construction. In estimating the language which is necessary to constitute a lease the form of words does not control. It is not necessary that the word "lease" should be used. Whatever is equivalent will be equally available. If the words assume the form of a license, covenant or agreement, and the other requisites of a lease are present, they will be sufficient: 2 Lewis's Blackstone, 140, note by Sharswood; 2 Thomas's Coke, 403, note; Moore v. Miller, 8 Pa. 272, 283. "These requisites are a term of years with a certain beginning and ending granted by the lessor to the lessee: " Bussman v. Ganster, 72 Pa. 285. What essential of a valid lease of the house and garden is lacking in the agreement between these parties set forth in the finding which is the subject of the eleventh assignment of error? There was (1) a grant of the use of specifically described property, namely, the house and garden; (2) for a certain term, namely, for one year from April 1, 1894, provided the grantee should comply with the terms of the agreement; (3) in part consideration for certain services to be rendered by him. There is nothing in the instrument to show that Fry was not to have exclusive possession of the house and garden, and, if he complied with the terms of the agreement, he was as secure in his possession during the term as if the technical words, "demise, lease and to farm let" had been used. The conditions upon which alone he could be removed were thus expressed; "but should he refuse at any time to comply with the agreement, then he is to remove from off the premises inside of

fifteen days after such refusal, and a legal notice is given by the said D. Clinger . . . . and should the said William Fry continue on the said premises after the expiration of this lease, then this lease to continue in full force for another year, and so on from year to year until a legal notice is given for such removal." All this is inconsistent with the idea that he occupied the house and garden as a mere servant or bailiff.  See Mitchell v. Com., 37 Pa. 187.  So far as possession of these was concerned he had all the rights of a tenant for years.  A lease of these premises was not inconsistent with the contract of hiring.  Both could be incorporated in one instrument.  It is a question of intent.  All that need be said as to the supposed repugnancy of the two contracts is well expressed thus in the opinion of the court below: " We know of no reason why the owner of a farm may not lease any part thereof and retain possession of the balance.  He may rent one field and keep another.  He may lease the stable and give possession to the lessee.  So he may lease the house and garden and retain possession of the balance of the farm.  That is what, according to the agreement was done in this case."

We come then to the question as to the reservation and payment of rent.  Aside from the use of the house and garden, Frey was to receive for his services $12.00 per month for the year; five hundred weight of pork fattened; twenty-five bushels of potatoes; one half of the fruit; one half of the butter; and one half of the turkeys and chickens that were raised on the farm; and the court has found as a fact, that " Clinger would not have paid any more to Fry if he had not occupied the house."  But would Fry have agreed to work for the compensation above referred to, if he had not been granted the use of the house and garden?  He says not.  So that a finding, that the parties meant that Fry was to have the use of the house as a gratuity, in addition to what they both understood to be his full compensation, would have been wholly unwarranted.  Neither the written agreement nor the parol testimony—assuming it to be competent—shows that the minds of the parties ever met on any such proposition.  The court has found, upon uncontradicted evidence, that the " yearly value " of the house and garden was $30.00, and under the contract Fry was to have the use of these premises " in addition to the other compensation for services to

be rendered." The only reasonable construction of this clause is, that the use of the premises entered into, and formed part of, his compensation. As he occupied them for two years and rendered the services, the court correctly held that he paid the rent by his services, and thereby gained a settlement under clause III., sec. 9 of the Act of June 13, 1836, P. L. 539. Under the poor laws a settlement cannot be gained by leasing alone, .there must also be the payment of rent, but this need not be paid in money; it may be paid in money's worth,—labor or other equivalent: 2 Bl. Com. 41; Jackson & Gross, L. & T. 22; Laporte v. Hillsgrove, 95 Pa. 269; Spring Twp. v. Walker Twp., 1 Pa. Superior Ct. 383. Hence, where an operative was engaged by the month at certain money wages and a house and garden "into the bargain," it was held, that by living in the house for one whole year, it being of the yearly value of $10.00, and rendering the services for which he was hired, he gained a settlement: Beaver v. Hartley, 11 Pa. 254. See also the English cases cited in the opinion of Judge BURNSIDE. Notwithstanding the very earnest argument of appellants' counsel, we are of opinion that the facts of this case, as found by the court below, fairly bring it within the principle applied in Beaver v. Hartley, and ever since recognized.

As to the conclusiveness of the findings of fact, where there is competent evidence to support them we need only refer to some of our own cases: Spring Twp. v. Walker Twp., 1 Pa. Superior Ct. 383; Lunacy of Christy, 2 Pa. Superior Ct. 259; Elderton v. Plum Creek, 2 Pa. Superior Ct. 397; Overseers v. Overseers, 4 Pa. Superior Ct. 570–573; Edenburg v. Strattanville, 5 Pa. Superior Ct. 516; Cumberland Co. v. Overseers, 7 Pa. Superior Ct. 303.

The order is affirmed and the appeal dismissed at the costs of the appellants.